# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **TERRY D. SMITH**<br><br>             Plaintiff,<br><br>     v.<br><br>**NANCY A. BERRYHILL**,<br>Commissioner of Social Security,[1]<br><br>             Defendant. | Case No. 2:16-cv-1247-SI<br><br>**OPINION AND ORDER** |

Robyn M. Rebers, P.O. Box 3530, Wilsonville, OR 97070. Of Attorneys for Plaintiff.

Billy J. Williams, United States Attorney, and Janice E. Herbert, Assistant United States Attorney, United States Attorney's Office, 1000 S.W. Third Avenue, Suite 600, Portland, OR 97204; Alexis L. Toma, Special Assistant United States Attorney, Office of the General Counsel, Social Security Administration, 701 Fifth Avenue, Suite 2900 M/S 221A, Seattle, WA 98104. Of Attorneys for Defendant.

**Michael H. Simon, District Judge.**

Terry D. Smith ("Plaintiff") seeks judicial review of the final decision of the

Commissioner of the Social Security Administration ("Commissioner") denying his application

for Disability Insurance Benefits ("DIB"). For the following reasons, the Commissioner's

decision is AFFIRMED.

---

[1] Nancy A. Berryhill is now the Acting Commissioner of Social Security. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Nancy A. Berryhill is substituted for Commissioner Carolyn W. Colvin as the defendant in this suit.

**STANDARD OF REVIEW**

The district court must affirm the Commissioner's decision if it is based on the proper legal standards and the findings are supported by substantial evidence. 42 U.S.C. § 405(g); *see also Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989). "Substantial evidence" means "more than a mere scintilla but less than a preponderance." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009) (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)). It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quoting *Andrews*, 53 F.3d at 1039).

Where the evidence is susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). Variable interpretations of the evidence are insignificant if the Commissioner's interpretation is a rational reading of the record, and this Court may not substitute its judgment for that of the Commissioner. *See Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193, 1196 (9th Cir. 2004). "[A] reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (quotation marks omitted)). A reviewing court, however, may not affirm the Commissioner on a ground upon which the Commissioner did not rely. *Id.*; *see also Bray*, 554 F.3d at 1226.

**BACKGROUND**

**A. Plaintiff's Application**

Plaintiff protectively filed an application for DIB on February 10, 2010, alleging disability beginning November 17, 2008. AR 12. He was 37 years old as of the claimed disability onset date. Plaintiff alleged disability due to "lower back problems." AR 67. The Commissioner

denied the application initially and upon reconsideration. Plaintiff thereafter requested a hearing before an Administrative Law Judge ("ALJ"). AR 12. An administrative hearing was held by ALJ John Bauer ("ALJ Bauer") on May 23, 2012. *Id.* ALJ Bauer subsequently ruled that Plaintiff was not disabled under the Social Security Act. AR 24. Plaintiff timely appealed the final decision of the Commissioner to the United States District Court (*Smith v. Commissioner*, Case No. 2:13-cv-1591-PK). Pursuant to a stipulation of the parties, U.S. Magistrate Judge Paul Papak remanded the case for further administrative proceedings on May 14, 2014. AR 832-33.

The Court's order, which was proposed by the parties, included, among others, provisions ordering the ALJ upon remand to: "(4) further consider the claimant's subjective complaints, pursuant to [Social Security Rule] SSR 96-7p; (5) expressly evaluate the treating, examining, and non-examining medical source opinions in the updated record and explain the reason for the weight accorded this opinion evidence." *Id.*; *see also* Case No. 2:13-cv-1591-PK Docket, ECF 18. The Appeals Council then vacated the final decision and remanded the case to a new ALJ to resolve the issues of the consistency of the vocational expert's testimony with the Dictionary of Occupational Titles and whether Plaintiff's diagnosed depression was a medically determinable or severe impairment. AR 841-42. The Appeals Council, among other things, also ordered the new ALJ to:

- Further evaluate the claimant's subjective complaints and provide rationale in accordance with the disability regulations pertaining to evaluation of symptoms (20 CFR 404.1529) and Social Security Ruling 96-7p.

- Give further consideration to the treating and nontreating source opinions pursuant to the provisions of 20 CFR 404.1527 and Social Security Rulings 96-2p and 96-5p and nonexamining source opinions pursuant to the provisions of 20 CFR 404.1527(e) and Social Security Ruling 96-6p, and explain the weight given to such evidence. As appropriate, the [ALJ] may request the treating and nontreating source to

provide additional evidence and/or further clarification of the
opinion (20 CFR 404.1512).

AR 842.

A second administrative hearing was held by ALJ Ted Neiswanger ("the ALJ") on

December 8, 2015. AR 715. The ALJ subsequently ruled that Plaintiff was not disabled under the

Social Security Act. AR 731. The Appeals Council denied Plaintiff's request for review, making

the ALJ's decision the final decision of the Commissioner. AR 821. Plaintiff now seeks judicial

review of that decision.

## B. The Sequential Analysis

A claimant is disabled if he or she is unable to "engage in any substantial gainful activity

by reason of any medically determinable physical or mental impairment which . . . has lasted or

can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C.

§ 423(d)(1)(A). "Social Security Regulations set out a five-step sequential process for

determining whether an applicant is disabled within the meaning of the Social Security Act."

*Keyser v. Comm'r Soc. Sec. Admin.*, 648 F.3d 721, 724 (9th Cir. 2011); *see also* 20 C.F.R.

§§ 404.1520 (DIB), 416.920 (SSI); *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). Each step is

potentially dispositive. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The five-step sequential

process asks the following series of questions:

1.  Is the claimant performing "substantial gainful activity?" 20 C.F.R.
    §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). This activity is work involving
    significant mental or physical duties done or intended to be done for pay
    or profit. 20 C.F.R. §§ 404.1510, 416.910. If the claimant is performing
    such work, she is not disabled within the meaning of the Act. 20 C.F.R.
    §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If the claimant is not performing
    substantial gainful activity, the analysis proceeds to step two.

2.  Is the claimant's impairment "severe" under the Commissioner's
    regulations? 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). An
    impairment or combination of impairments is "severe" if it significantly

limits the claimant's physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1521(a), 416.921(a). Unless expected to result in death, this impairment must have lasted or be expected to last for a continuous period of at least 12 months. 20 C.F.R. §§ 404.1509, 416.909. If the claimant does not have a severe impairment, the analysis ends. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If the claimant has a severe impairment, the analysis proceeds to step three.

3.    Does the claimant's severe impairment "meet or equal" one or more of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so, then the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the impairment does not meet or equal one or more of the listed impairments, the analysis continues. At that point, the ALJ must evaluate medical and other relevant evidence to assess and determine the claimant's "residual functional capacity" ("RFC"). This is an assessment of work-related activities that the claimant may still perform on a regular and continuing basis, despite any limitations imposed by his or her impairments. 20 C.F.R. §§ 404.1520(e), 404.1545(b)-(c), 416.920(e), 416.945(b)-(c). After the ALJ determines the claimant's RFC, the analysis proceeds to step four.

4.    Can the claimant perform his or her "past relevant work" with this RFC assessment? If so, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the claimant cannot perform his or her past relevant work, the analysis proceeds to step five.

5.    Considering the claimant's RFC and age, education, and work experience, is the claimant able to make an adjustment to other work that exists in significant numbers in the national economy? If so, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v), 404.1560(c), 416.960(c). If the claimant cannot perform such work, he or she is disabled. *Id.*

*See also Bustamante v. Massanari*, 262 F.3d 949, 954 (9th Cir. 2001).

The claimant bears the burden of proof at steps one through four. *Id.* at 953; *see also*

*Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999); *Yuckert*, 482 U.S. at 140-41. The

Commissioner bears the burden of proof at step five. *Tackett*, 180 F.3d at 1100. At step five, the

Commissioner must show that the claimant can perform other work that exists in significant

numbers in the national economy, "taking into consideration the claimant's residual functional capacity, age, education, and work experience." *Id.*; *see also* 20 C.F.R. §§ 404.1566, 416.966 (describing "work which exists in the national economy"). If the Commissioner fails to meet this burden, the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If, however, the Commissioner proves that the claimant is able to perform other work existing in significant numbers in the national economy, the claimant is not disabled. *Bustamante*, 262 F.3d at 953-54; *Tackett*, 180 F.3d at 1099.

**C. The ALJ's Decision**

The ALJ began his opinion by noting that Plaintiff met the insured status requirements of the Social Security Act through December 31, 2013. AR 717. The ALJ then applied the sequential process. AR 717-31. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since his alleged disability onset date. AR 717. At step two, the ALJ found that Plaintiff suffered from the following severe impairments: degenerative disc disease of the lumbar spine, with spondylosis; degenerative joint disease of the right knee; obesity (in combination with spinal and knee impairments); vision loss in the right eye; and major depressive disorder. AR 717-18. At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the impairments listed in the regulations. AR 718-20.

The ALJ next determined Plaintiff's RFC. AR 720-30. The ALJ found that Plaintiff had the capacity to perform sedentary work as defined in 20 C.F.R. § 404.1567(a), except he: (1) is limited to lifting, carrying, pushing, and pulling up to ten pounds occasionally and up to five pounds frequently; (2) is limited to standing and walking for two of eight hours and sitting for six of eight hours; (3) must avoid concentrated exposure to hazards, due to depth perception limits and the use of pain medications; (4) is restricted to tasks that do not require good depth

perception due to very poor vision in the right eye; (5) cannot interact with the public; (6) cannot

perform work in crowds; and (7) is limited to the performance of simple and routine work tasks.

AR 720. At this step, the ALJ considered Plaintiff's symptom testimony and the submitted

written lay testimony. AR 720-30. Although the ALJ found that Plaintiff's medically

determinable impairments could reasonably be expected to cause the symptoms alleged by

Plaintiff, the ALJ also found that Plaintiff's testimony concerning the intensity, persistence, and

limiting effects of those symptoms was not entirely credible. AR 720; *see also* AR 727, 729-30.

The ALJ also considered all medical opinions, including the opinion of treating physician

Dr. Julie Broyhill, which the ALJ accorded limited weight. AR 727-28.

At step four, the ALJ found that Plaintiff could not perform his past relevant work as a

construction painter. AR 730. At step five the ALJ found that there were other jobs in the

national economy that Plaintiff could perform. AR 730-31. The ALJ concluded that Plaintiff was

not under a disability as defined in the Social Security Act. AR 731.

## DISCUSSION

Plaintiff seeks review of the ALJ's determination that Plaintiff has not been under a

disability as defined in the Social Security Act. Plaintiff argues the ALJ erred in making his

determination by: (A) failing to follow the remand orders of the Court and Appeals Council;

(B) not fully crediting the limitations testified-to by Plaintiff; and (C) improperly evaluating the

opinion of Dr. Broyhill.

## A.  Remand Orders

An ALJ must obey a remand order from a federal court and "cannot vary or examine that

mandate for any purpose other than executing it." *Stacy v. Colvin*, 825 F.3d 563, 568 (9th

Cir. 2016) (quotation marks omitted). An ALJ cannot contradict the remand order, but may

decide an issue that is not foreclosed by the order. *Id.* Deviation from a court's remand order in

the subsequent administrative proceedings is legal error subject to reversal upon judicial review. *Sullivan v. Hudson*, 490 U.S. 877, 885-86 (1989). Similarly, an ALJ must take any action ordered by the Appeals Council and may take any additional action that is not inconsistent with the order. 20 C.F.R. § 404.977 (2017). Any error by the ALJ to obey a remand order is only relevant as to the effect of the errors on the analysis on the merits. *Strauss v. Comm'r of the Soc. Sec. Admin.*, 635 F.3d 1135, 1138 (9th Cir. 2011). "A claimant is not entitled to benefits under the statute unless the claimant is, in fact, disabled, no matter how egregious the ALJ's errors may be." *Id.*

Plaintiff argues that the ALJ failed to follow the remand orders of the Court and Appeals Council. Plaintiff contends that the Court would have not included orders to "further consider the claimant's subjective complaints" and "expressly evaluate" the medical source opinions in the remand order unless ALJ Bauer's original analysis had been insufficient. Plaintiff also argues that, by merely copying and pasting ALJ Bauer's analysis of the medical opinions and Plaintiff's symptom testimony, the ALJ failed to obey the remand order.

The ALJ concluded in his opinion that "[t]he U.S. District Court did not find error with the previous decision's analysis of the claimant's credibility or impairments, and objected only to vocational expert testimony and analysis." AR 720. The ALJ's understanding of the remand order from the Court was not quite correct. The Court remand order made no findings regarding the sufficiency of ALJ Bauer's opinion one way or the other. The order was filed after both parties stipulated that the case be remanded. AR 832. The order also used the exact wording that had been proposed by the parties. *Compare* Case No. 2:13-cv-1591-PK docket, ECF 18 *with* AR 832-33. But the order directed that upon remand a new ALJ must "further consider"

Plaintiff's subjective complaints and "expressly evaluate" the medical source opinions and explain the weight given to them. AR 832-833.

The ALJ's misunderstanding of the Court remand order is understandable because the Appeals Council order stated that the case was being remanded for resolution on the issues of vocational expert analysis and Plaintiff's alleged depression. AR 841-42. Below these specific orders, however, the Appeals Council also ordered the ALJ to "[f]urther evaluate" Plaintiff's subjective complaints and "[g]ive further consideration to" the medical source opinions and explain the weight given to them. AR 842. Although the ALJ's conclusory statement about the Court's findings was incorrect, the ALJ still followed both of the remand orders.

The ALJ held a second administrative hearing and issued a new decision. AR 715-731, 746-99. Despite copying significant portions of ALJ Bauer's analysis into the new opinion, *see, e.g.*, AR 16-19 (portion of ALJ Bauer's opinion), 721-24 (same portion copied into the ALJ's opinion), the ALJ also added additional discussion. *See, e.g.*, AR 724-26. The record shows that the ALJ further considered and evaluated Plaintiff's subjective symptom complaints. The ALJ updated the discussion of Plaintiff's treatment record. AR 724-26. This new discussion included facts that were relevant to the limitations claimed by Plaintiff as a result of her symptoms. For example, one of the reasons given by the ALJ for not fully accepting Plaintiff's claimed limitations was Plaintiff's noncompliance with prescribed treatment. AR 727. The ALJ noted that in 2015 Plaintiff ran out of his narcotics medication before he was eligible for a refill numerous times, which was a violation of his pain contract. AR 725. This and other additions to the opinion show that the ALJ further considered Plaintiff's symptom testimony, as was ordered by the Court and the Appeals Council.

The record also shows that the ALJ further considered and expressly evaluated the medical source opinions. The ALJ added two additional examples of how Dr. Broyhill's medical opinion was unpersuasive and inconsistent with her own treatment notes. *See* AR 728 (noting that Dr. Broyhill opined Plaintiff was severely limited in his ability to reach but gave no diagnosis consistent with an upper extremities problem, and also that Dr. Broyhill did not explain her opinion that Plaintiff would miss more workdays and need extra breaks). Giving additional reasoning demonstrated that the ALJ further considered and expressly evaluated Dr. Broyhill's opinion. Thus, the ALJ obeyed the remand orders of the Court and Appeals Council and did not commit a legal error by ignoring these remand orders.

**B. Plaintiff's Symptom Testimony**

Plaintiff next argues that the ALJ improperly rejected Plaintiff's symptom testimony. There is a two-step process for evaluating a claimant's testimony about the severity and limiting effect of the claimant's symptoms. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007) (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (en banc)). When doing so, "the claimant need not show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom." *Smolen v.*, 80 F.3d at 1282.

"Second, if the claimant meets this first test, and there is no evidence of malingering, 'the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so.'" *Lingenfelter*, 504 F.3d at 1036 (quoting *Smolen*, 80 F.3d at 1281). It is "not sufficient for the ALJ to make only general findings; he must

state which pain testimony is not credible and what evidence suggests the complaints are not credible." *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). Those reasons must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (citing *Bunnell*, 947 F.2d at 345-46).

Effective March 16, 2016, the Commissioner superseded SSR 96-7p governing the assessment of a claimant's "credibility" and replaced it with a new rule, SSR 16-3p. *See* SSR 16-3p, *available at* 2016 WL 1119029. SSR 16-3p eliminates the reference to "credibility," clarifies that "subjective symptom evaluation is not an examination of an individual's character," and requires the ALJ to consider of all of the evidence in an individual's record when evaluating the intensity and persistence of symptoms. *Id.* at *1-2. The Commissioner recommends that the ALJ examine "the entire case record, including the objective medical evidence; an individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record." *Id.* at *4. The Commissioner recommends assessing: (1) the claimant's statements made to the Commissioner, medical providers, and others regarding the claimant's location, frequency and duration of symptoms, the impact of the symptoms on daily living activities, factors that precipitate and aggravate symptoms, medications and treatments used, and other methods used to alleviate symptoms; (2) medical source opinions, statements, and medical reports regarding the claimant's history, treatment, responses to treatment, prior work record, efforts to work, daily activities, and other information concerning the intensity, persistence, and limiting effects of an individual's symptoms; and (3) non-medical

source statements, considering how consistent those statements are with the claimant's statements about his or her symptoms and other evidence in the file. *See id.* at *6-7.

The ALJ's assessment of a claimant's subjective testimony may be upheld overall even if not all of the ALJ's reasons for rejecting the testimony are upheld. *See Batson*, 359 F.3d at 1197. The ALJ may not, however, make a negative finding "solely because" the claimant's symptom testimony "is not substantiated affirmatively by objective medical evidence." *Robbins*, 466 F.3d at 883.

At Plaintiff's first administrative hearing in 2012, Plaintiff testified that his knee and back pain limits his ability to stand, walk, hold himself up, get up from a seated position, lay down, put on his back brace, sit in a work-like position with outstretched arms, lift things, use his hands, bend, stoop, kneel, and sleep. AR 39, 41, 43, 45-48, 51. Plaintiff also testified that he could not sit upright in a chair for more than 20 minutes, needed to walk around and stretch for 30-45 minutes after sitting in a chair for 20 minutes, could be on his feet for 30-45 minutes at a time, could sit with outstretched hands for no more than 30-45 minutes, and had to rest after walking a few blocks. AR 41-43, 46. At Plaintiff's second administrative hearing, he testified that his physical limitations for sitting, standing, and walking had worsened slightly. AR 777. Plaintiff also testified that he needed to alternate between sitting, standing, and walking throughout the day, and would need to take extra breaks in the course of the work day. AR 778-79.

The ALJ did not fully credit Plaintiff's statements regarding the extent, severity, and limiting effects of his impairments. AR 720. The ALJ gave four reasons for discrediting Plaintiff's claimed limitations: (1) Plaintiff had a history of noncompliance with medical advice; (2) Plaintiff's testimony was inconsistent with the scope of the his reported activities of daily

living; (3) Plaintiff's work history suggest factors other than his alleged symptoms affect his ability to maintain full-time employment; and (4) Plaintiff's ongoing polysubstance abuse.[2] Plaintiff argues that the ALJ's reasons were not specific, clear, or convincing enough to reject Plaintiff's symptom testimony.

## 1. Noncompliance with Treatment

The ALJ first found that Plaintiff's "[n]umerous incidents of noncompliance suggest he does not have a sincere interest in achieving medical and functional improvement." AR 727; *see also* AR 721-23, 725, 730. The ALJ also noted that when Plaintiff complied with prescribed treatment, his symptoms improved and his RFC increased. AR 725. Failure to seek treatment or follow a prescribed course of treatment, which is unexplained or inadequately explained, is a clear and convincing reason to discredit pain testimony. *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989). Noncompliance with medical advice may "cast doubt on the sincerity of the claimant's pain testimony." *Id.* In addition, impairments that can be controlled effectively with medication or treatment are not disabling for purposes of determining eligibility for benefits. *See Warre v. Comm'r Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006).

There are numerous examples in the record of Plaintiff failing to follow a prescribed course of treatment. *See, e.g.*, AR 442, 1093, 1139-1140 (Plaintiff taking more narcotics than prescribed and running out of his prescribed narcotics early), 545 (Plaintiff being discharged

---

[2] The parties dispute what labels or categories various reasons given by the ALJ fall under. Defendant asserts that Plaintiff "waived" his ability to respond to certain arguments, whereas Plaintiff argues that Defendant gave "post hoc rationalizations" beyond reasoning relied upon by the ALJ. Although the ALJ explained his decision with "less than ideal clarity," the ALJ's "path may reasonably be discerned." *Brown-Hunter v. Colvin*, 806 F.3d 487, 492 (9th Cir. 2015) (quoting *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1099 (9th Cir. 2014)). The Court considers on the merits the arguments fairly presented by the parties, regardless of how the parties chose to label them. After carefully examining the ALJ's opinion, the Court concludes that the ALJ specifically relied upon these four reasons when he discounted Plaintiff's symptom testimony.

from physical therapy program after failing to show up to two appointments), 571 (finding that Plaintiff had violated his pain contract with an inconsistent urine toxicology screening), 591 (noting that Plaintiff had not started medications prescribed to him at the previous appointment), 687, 1150, 1160, 1164, 1166 (Plaintiff being referred to physical therapy multiple times since May 4, 2012, but still had not seen a physical therapist as of Jan. 23, 2015), 1164 (Plaintiff admitting to a doctor that he had bought narcotics on the street during the past year). Plaintiff's failure to follow prescribed treatment was either unexplained or inadequately explained. *See, e.g.*, AR 1163, 1240-47 (Plaintiff told family doctor that he was not doing physical therapy because specialist had advised him not to; no notes from specialist indicating such instructions).

When Plaintiff did follow a prescribed course of treatment, his symptoms often improved. *See, e.g.*, 471, 476 (Plaintiff reporting to physical therapist that wearing his back brace improved his tolerance to daily activities), 477 (Plaintiff stating that methadone had improved his pain and ability to sleep), 534 (Plaintiff telling a physical therapist that previous manual therapy had helped relieve Plaintiff's leg pain), 574 (doctor noting in Plaintiff's Multidisciplinary Pain Program final review that Plaintiff's function and mobility had significantly improved, but that subjectively Plaintiff continued to have "pain perception issues"). The record supports the ALJ's finding that Plaintiff was not compliant with his prescribed treatment and that following prescribed treatment often provided Plaintiff relief. Plaintiff's noncompliance was thus a clear and convincing reason for the ALJ to discount Plaintiff's symptom testimony.

### 2. Activities of Daily Living

The ALJ next noted that the scope of Plaintiff's reported activities of daily living further undermined the credibility of his symptom testimony. AR 727, 729. Although "disability claimants should not be penalized for attempting to lead normal lives in the face of their

limitations," a level of activity that is inconsistent with claimed limitations has a bearing on the credibility of a claimant's symptom testimony. *Reddick v. Chater*, 157 F.3d 715, 722 (1998).

When questioned about his lifestyle, Plaintiff testified that he picks his daughter up from the school bus across the street, occasionally washes dishes, tidies up around the house, dresses himself, and takes showers without assistance. AR 47-48, 53, 785. In 2010, Plaintiff reported he also watches television, makes his daughter snacks, occasionally helps make dinner, takes care of his dog with some assistance from his wife, prepares simple meals, does limited vacuuming and sweeping, occasionally mows the lawn, drove every day, and talks to his mother on the phone. AR 183-85, 211-12. In a third party function report filled out in 2010, Plaintiff's wife stated he raced remote-controlled cars, did very limited laundry, dusted, played video games for short periods of time, visited family members, and could lift 15-20 pounds. AR 191, 195, 226, 228-29. In 2013, however, Plaintiff reported he could no longer prepare his own meals, sweep, or vacuum. AR 983. This level of activity was not inconsistent with Plaintiff's claimed limitations and the ALJ erred in so finding.

### 3. Work History

The ALJ next found that Plaintiff's "mediocre work history" suggested that "factors other than his alleged impairments affect [Plaintiff's] ability to maintain full-time employment." AR 727, 729-30. An ALJ may consider a claimant's work record when evaluating the credibility of a claimant's symptom testimony. 20 C.F.R. § 404.1529(c)(3); *see also* SSR 16-3p at *6; *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002) (upholding credibility finding where one of the factors considered by ALJ was the claimant's "extremely poor work history" and lack of a propensity to work in her lifetime).

The record shows that Plaintiff's assertions regarding his prior work history were inconsistent with his Federal Insurance Contributions Act ("FICA") yearly earnings. For

example, Plaintiff reported that from 1995 through 2001, when he worked for Jeff Paschke, he earned $9 an hour and worked more than eight hours a day, five to six days a week. AR 216-17. In 1997, Plaintiff's total FICA earnings for the year were $16,858.00. AR 167. At Plaintiff's self-reported wage of $9 per hour, the Court calculates that he worked approximately 1,873 hours in 1997. Working 1,873 hours in a year is less than full-time employment, assuming a full-time employee works 40 hours a week for 50 weeks out of the year. Working 1,873 hours in a year is also inconsistent with Plaintiff reporting that he worked more than eight hours a day, five to six days a week. *See* AR 217. Similar disparities between total yearly income and self-reported wage rates and hours occurred in 1998, 1999, and 2000. *See* AR 167.

After 2000, there appears to still be a disparity between Plaintiff's yearly FICA income and the work hours and wage rates he reported. *See* AR 164-65, 167, 216-22. It is difficult to calculate how many hours Plaintiff actually worked, however, because his income came from multiple sources. These sources included self-employment, and people who are self-employed pay a self-employment tax based on a yearly income that is differently calculated than yearly income under FICA. *See* 26 U.S.C. §§ 1401-1402. Nevertheless, Plaintiff's yearly FICA income for 2001-2008 seems quite low for someone working full-time. AR 167.

When the evidence is susceptible to more than one rational interpretation, the ALJ's conclusion must be upheld. *Burch*, 400 F.3d at 679. Based on the available record, it was rational for the ALJ to conclude that Plaintiff's work history demonstrated an inability to maintain full-time employment even before his alleged disability onset date. Plaintiff's work history was therefore a clear and convincing reason for the ALJ to discount Plaintiff's claimed limitations.

### 4. Use of Narcotics

Finally, the ALJ noted that Plaintiff's "ongoing polysubstance abuse" was a reason to consider Plaintiff's testimony "with caution." AR 730. An ALJ's finding that a claimant is

engaged in drug-seeking behavior is a clear and convincing reason for rejecting a claimant's symptom testimony. *See Edlund v. Massanari*, 253 F.3d 1152, 1157 (9th Cir. 2001), *as amended on reh'g* (Aug. 9, 2001) (upholding an ALJ's finding that a claimant's reported limitations were not credible when he was found to be "exaggerating his complaints of physical pain in order to receive prescription pain medication to feed his Valium addiction"); *see also Massey v. Comm'r Soc. Sec. Admin.*, 400 F. App'x 192, 194 (9th Cir. 2010) ("the ALJ's interpretation that [plaintiff] is engaged in drug-seeking behavior is a clear and convincing reason for disregarding his testimony.").

In his opinion, the ALJ pointed out multiple instances in the record that indicated Plaintiff had abused narcotics. *See, e.g.*, AR 721 (citing AR 442) (finding that Plaintiff "has used more Oxycodone than prescribed"); AR 723 (citing AR 571) (noting that Plaintiff had, in 2011, violated his pain contract by providing inconsistent urine drug screens); AR 725 (citing AR 1061, 1070, 1082, 1093, 1102) (stating that in 2015 Plaintiff had multiple visits within a short period of time to the emergency room where he asked for more painkillers, which caused a doctor to note the likelihood of "narcotic tolerance and possible abuse"). The Court "reasonably discerns" that the ALJ found that Plaintiff was engaged in drug-seeking behavior. *Brown-Hunter*, 806 F.3d at 492. This was a rational interpretation of the record. Plaintiff's ongoing abuse of narcotics was therefore a clear and convincing reason for the ALJ to discount Plaintiff's symptom testimony.

The ALJ erred in considering Plaintiff's activities of daily living to discount Plaintiff's claimed limitations. The ALJ gave three other clear and convincing reasons, however, for discounting Plaintiff's symptom testimony. An ALJ's decision to discount the limitations testified-to by a claimant may be sustained even if not all of the ALJ's reasons for rejecting the

testimony are upheld. *See Batson*, 359 F.3d at 1197. The Court finds that the ALJ's evaluation of Plaintiff's symptom testimony was legally sufficient and a rational interpretation of the record.

**C.  Failure to Credit the Opinion of Dr. Broyhill.**

Plaintiff also argues that the ALJ improperly evaluated the medical opinion of treating physician, Dr. Broyhill. Specifically, Plaintiff argues that Dr. Broyhill's medical opinion deserved controlling weight and also that the ALJ did not give specific and legitimate reasons for rejecting Dr. Broyhill's opinion.

The ALJ is responsible for resolving conflicts in the medical record, including conflicts among physicians' opinions. *Carmickle v. Comm'r of Soc. Sec.*, 533 F.3d 1155, 1164 (9th Cir. 2008). The Ninth Circuit distinguishes between the opinions of three types of physicians: treating physicians, examining physicians, and non-examining physicians. Generally, "a treating physician's opinion carries more weight than an examining physician's, and an examining physician's opinion carries more weight than a reviewing physician's." *Holohan v. Massanari*, 246 F.3d 1195, 1202 (9th Cir. 2001). If a treating physician's opinion is supported by medically acceptable techniques and is not inconsistent with other substantial evidence in the record, the treating physician's opinion is given controlling weight. *Id.*; *see also* 20 C.F.R. § 404.1527(d)(2). A treating doctor's opinion that is not contradicted by the opinion of another physician can be rejected only for "clear and convincing" reasons. *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008). If a treating doctor's opinion is contradicted by the opinion of another physician, the ALJ must provide "specific and legitimate reasons" for discrediting the treating doctor's opinion. *Id.*

Specific, legitimate reasons for rejecting a physician's opinion may include its reliance on a claimant's discredited subjective complaints, inconsistency with medical records, inconsistency with a claimant's testimony, and inconsistency with a claimant's daily activities.

*Tommasetti v. Astrue*, 533 F.3d 1035, 1040 (9th Cir. 2008); *Andrews*, 53 F.3d at 1042-43. An ALJ effectively rejects an opinion when he or she ignores it. *Smolen v. Chater*, 80 F.3d 1273, 1286 (9th Cir. 1996).

### 1. Dr. Broyhill's Opinion

Dr. Broyhill's medical opinion was written after treating Plaintiff seven times at Silverton Health's Woodburn Family Medicine clinic. AR 609-621, 685-711. Dr. Broyhill first examined Plaintiff on July 8, 2011, after Plaintiff fainted and injured his ribs. AR 621. At Plaintiff's third appointment on December 6, 2011, his chief complaint was his lower back pain. AR 609. Plaintiff reported an exacerbation of his chronic low back and right leg pain, with numbness and tingling in his leg. *Id.* Dr. Broyhill prescribed physical therapy and a follow-up exam. AR 610-11. Plaintiff did not start physical therapy until February 29, 2012. AR 1027-28. Plaintiff attended four physical therapy sessions before choosing to be referred back to Dr. Broyhill with a plan for surgical consult. *Id.* Plaintiff then told Dr. Broyhill on April 4, 2012, that the physical therapy had "helped some but not much." AR 694.

In April, 2012, Plaintiff reported that he felt his symptoms had progressed since the previous year. *Id.* Dr. Broyhill ordered magnetic resonance imaging ("MRI") of Plaintiff's lumbar spine, to be compared with Plaintiff's March 2011 MRI. AR 629-30, 697. On May 4, 2012, shortly before authoring her medical opinion, Dr. Broyhill noted that Plaintiff's MRI showed some degenerative changes but no significant change from the 2011 MRI. AR 685. Dr. Broyhill referred Plaintiff to a pain management program and advised that he return to physical therapy. AR 687.

On May 15, 2012, Dr. Broyhill filled out a Functional Assessment form for Plaintiff. AR 631-33. Dr. Broyhill opined that Plaintiff would need to take one five-to-ten minute break every hour, would miss more than two days of work a month, could sit less than six hours in a

workday, needed to periodically alternate between sitting and standing, and could stand or walk

less than two hours in a workday. AR 631. Dr. Broyhill also stated that Plaintiff was limited to

pushing and pulling occasionally, lifting and carrying 20 pounds rarely, and lifting and carrying

less than ten pounds occasionally. AR 632. Dr. Broyhill noted that such activity "exacerbates

[Plaintiff's] back pain." *Id*. In explanation for these limitations, Dr. Broyhill wrote, "Patient with

degenerative disc disease and lumbar spondylosis. Activities like above exacerbate pain

symptoms." *Id*. Dr. Broyhill also opined that Plaintiff was limited to reaching only rarely.

AR 633. Dr. Broyhill finally stated that Plaintiff should not work in an environment with

vibration or hazards, writing that "[p]ain in [Plaintiff's] lower back exacerbated by vibration

[and] may cause [Plaintiff] balance problems which limits working with hazards like heights."

*Id*.

Dr. Broyhill's opinion was contradicted by the opinions of State agency consultants,

Dr. Martin Kehrli and Dr. Neal Berner. AR 74-75, 89-90. Accordingly, the ALJ had to provide

"specific and legitimate reasons" to reject Dr. Broyhill's medical opinion. *Ryan*, 528 F.3d at

1198.

### 2.  The ALJ's Analysis and Conclusions

A treating physician's opinion is given controlling weight as long as it is found to be

well-supported by medically acceptable clinical and laboratory diagnostic techniques and not

inconsistent with the other substantial evidence in the record. *See* 20 C.F.R. § 404.1527(c)(2).

When a treating source's medical opinion is not given controlling weight, the ALJ must consider

several factors in deciding what weight to give various medical opinions in the record.

*Holohan*, 246 F.3d at 1202; *see also* 20 C.F.R. § 404.1527(c)(2). "These factors include the

'[l]ength of the treatment relationship and the frequency of examination' by the treating

physician, the '[n]ature and extent of the treatment relationship' between the patient and the

treating physician, the '[s]upportability' of the physician's opinion with medical evidence, and

the consistency of the physician's opinion with the record as a whole." *Ghanim v. Colvin*, 763

F.3d 1154, 1162 (9th Cir. 2014) (quoting 20 C.F.R. § 404.1527(c)(2)-(6)).

The ALJ did not give Dr. Broyhill's controlling weight because it was "not consistent

with the evidence of record." *See* AR 728. The ALJ then accorded the opinion "limited weight."

AR 728. The ALJ noted that, as a treating physician, Dr. Broyhill was "in an advantageous

position to assess the effect of [Plaintiff's] impairments over time" but that she had "failed to

support the opinion with persuasive explanation." *Id*. The ALJ then gave examples of why

Dr. Broyhill's opinion was inconsistent with the record and unpersuasive.

The ALJ found that Dr. Broyhill relied solely on Plaintiff's subjective complaints when

Dr. Broyhill wrote that certain activities increased pain. *Id*. When an ALJ finds a claimant's

symptom testimony not to be supported in the record, and a treating physician's opinions are

largely based on the claimant's self-reports, the ALJ may discount the physician's opinion. *See*

*Ghanim v. Colvin*, 763 F.3d 1154, 1162 (9th Cir. 2014); *Tommasetti v. Astrue*, 533 F.3d 1035,

1041 (9th Cir. 2008).

It was a rational interpretation of the record for the ALJ to conclude that much of

Dr. Broyhill's opinion was based on Plaintiff's self-reports rather than the objective treatment

record. For example, Dr. Broyhill opined that Plaintiff had severe limitations in his ability to

reach, but gave no diagnosis consistent with an upper extremities problem. AR 728. Nothing in

Dr. Broyhill's treatment notes or Plaintiff's medical record supports that he had a reaching

limitations, or even any permanent or long-term upper body limitations. *See e.g.*, 310-313

(in 2010, finding normal musculoskeletal and neurological testing in upper body), 466, 479

(in 2011, Plaintiff's pain level did not change after physical therapy exercises involving upper

body and arms), 609 (Dr. Broyhill noting that "[p]ain localized to one or more joints lower back, right knee."), 621-22 (Dr. Broyhill finding sensory disturbance in the right arm after Plaintiff injured his right-side ribs), 1061 (in 2015, Plaintiff injured shoulder while lifting a boat). Plaintiff's testimony at his first ALJ hearing is the only evidence in the record that supports his claim of upper body limitations. *See* AR 46 (Plaintiff stating he was limited to sitting in a normal chair with outstretched hands for 30-45 minutes at a time), 47-48 (Plaintiff testifying that lifting and using his hands puts strain on his lower back).

As discussed above, the ALJ did not err in discounting Plaintiff's claimed limitations. AR 727. Reliance by Dr. Broyhill on Plaintiff's subjective complaints was therefore a specific and legitimate reason to accord Dr. Broyhill's medical opinion limited weight. *Id.*

The ALJ also noted that Dr. Broyhill did not present medical evidence in support of her opinion that Plaintiff had reaching limitations, would miss work days, and would need extra work breaks. AR 728. When deciding what weight to accord medical opinions, one factor an ALJ must consider is supportability. 20 C.F.R. § 404.1527(c)(3). Supportability means whether the medical provider presented relevant evidence in support of his or her opinion. *See id.*

The ALJ included restrictions similar to those opined to by Dr. Broyhill when she expressly presented evidence in support of the limitation or such evidence was in her treatment notes. The ALJ included a restriction in Plaintiff's RFC for walking and standing, AR 720; Dr. Broyhill's treatment records and Plaintiff's diagnoses demonstrated that he was limited in the use of his legs and lower back. *See, e.g.*, AR 610, 694, 709 (recording that Plaintiff had a positive straight-leg raising test of his right leg in three different appointments); AR 686, 610, 694, 702, 709 (finding tenderness in Plaintiff's lumbosacral spine upon palpation). The ALJ also included in Plaintiff's RFC that he "must avoid concentrated exposure to hazards," AR 720;

Dr. Broyhill explained this restriction by writing that Plaintiff's lower back pain might cause balance problems. AR 728.

In contrast, the ALJ did not include restrictions from Dr. Broyhill's medical opinion in Plaintiff's RCF when the alleged limitations were unsupported by the record or persuasive explanation were not given. *Id.* (noting Dr. Broyhill gave no evidence or explanation in support of Plaintiff's having limited reaching capabilities, needing to miss more than two days of work a month, or needing to take extra work breaks). Finding that certain restrictions opined to by Dr. Broyhill lacked support was a rational interpretation of the record, and a specific and legitimate reason to accord Dr. Broyhill's medical opinion limited weight.

The ALJ's conclusions were based on the proper legal standards. It was rational interpretation of the record for the ALJ to find that Dr. Broyhill's medical opinion was inconsistent with the record and deserved less than controlling weight. The ALJ also gave legally sufficient specific and legitimate reasons for according Dr. Broyhill's opinion limited weight.

## CONCLUSION

For the reasons articulated in this Opinion and Order, the ALJ's decision that Plaintiff is not disabled is AFFIRMED.

**IT IS SO ORDERED**.

DATED this 26th day of April, 2017.

/s/ Michael H. Simon
Michael H. Simon
United States District Judge